UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SEAN PETER FLANAGAN, ET AL.,,

     Plaintiffs,

                                     Case No. 05-71697

v.

                                     Honorable Nancy G. Edmunds

ALTRIA GROUP, INC., and PHILIP
MORRIS USA, INC.,

     Defendants.

_____/


**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE THE AFFIDAVIT OF JOHN L.
PETERMAN [62]**


This case comes to the Court on Plaintiff's Motion to Strike the Affidavit of

Defendant's[1] expert witness, John L. Peterman.  For the reasons discussed below, the

Court DENIES Plaintiff's motion.

I.     The Peterman Affidavit

John L. Peterman has a Ph.D. in economics from the University of Virginia.  He was

a Fellow in Law and Economics at the University of Chicago Law School.  He has taught

economics at the University of Virginia, as well as at the University of Chicago Law School

and Graduate School of Business.  He has also served as an adjunct professor at the

College of William and Mary.  Peterman Aff. ¶ 3.

---

[1]Defendant Altria Group, Inc., is the parent company of Defendant Philip Morris
U.S.A., Inc.  For the sake of simplicity, the parties are referred to singularly as
"Defendant."

Dr. Peterman worked for the Federal Trade Commission ("FTC") for eighteen years. He worked in the Bureau of Economics as a Senior Economist, Associate Director for Special Projects, Deputy Director for Antitrust, Deputy Bureau Director, Acting Bureau Director, and Bureau Director. Since leaving the FTC, Peterman has been with LECG, a consulting firm specializing in economics, finance, and business. He is currently a Director. *Id.* ¶¶ 3-4.

Defendant has retained Dr. Peterman to offer expert testimony in this and other tobacco litigation. *See Price v. Philip Morris, Inc.*, 2003 WL 22597608 *21. Dr. Peterman has submitted a 101-page affidavit which details the history of FTC regulation of the tobacco market, including advertising and promotion of cigarettes. The Affidavit includes 297 footnotes, referring to hundreds of exhibits, all of which appear to be publicly available. From these exhibits, and, Defendant contends, from his background in economics, Dr. Peterman makes several observations about the present case. Defendant describes the affidavit as follows:

> In his Affidavit, Dr. Peterman analyzed the structure and basic missions of the FTC, the extent of monitoring of cigarette advertising, and its comprehensive regulatory scheme over the testing, disclosure and marketing of low tar cigarettes including Lights. In his Affidavit, based not only on his experience at the FTC but also upon numerous FTC publications and guidelines (attached as exhibits to his Affidavit), Dr. Peterman avers that the FTC has closely monitored cigarette advertising and marketing practices for the past 50 years, that during that time FTC policy was to encourage cigarette manufacturers to develop and market lower yield cigarettes, that the FTC had implemented these policies through a variety of tools, including a standardized testing protocol for tar and nicotine and the publishing of the FTC test results, and that these actions constituted an FTC tar and nicotine program.

Br. of Def. 2.

Plaintiff has brought the present motion to strike the affidavit of Dr. Peterman on the basis that Peterman fails to explain the principles or methods behind his expert opinion.

II.     Standard of Review

Federal Rule of Evidence 702 provides,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 was amended in response to *Daubert v. Merril Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993).  In *Daubert*, the United States Supreme Court held that Rule 702 requires district courts to ensure that expert scientific testimony "both rests on a reliable foundation and is relevant to the task at hand."  *Id.* at 597.  Thus, Rule 702 imposes a "gatekeeping" duty on district courts, which must exclude unreliable and irrelevant evidence*.  See, e.g., Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002).  In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, the Supreme Court expanded *Daubert* to cover expert testimony based on "technical" and "other specialized knowledge."

The admissibility of expert testimony depends on (1) Whether it is based upon sufficient facts and data, (2) Whether it is the product of reliable principles and methods, and (3) Whether the expert has reliably applied the principles and methods to the facts of the case. *See United States v. Smithers*, 212 F.3d 306, 315 (6th Cir. 2000).

Expert testimony is relevant under when it will assist the trier of fact in understanding the evidence or determining a material fact in question.  *Daubert*, 509 U.S. at 592-93.  The party offering expert testimony must prove its admissibility by a preponderance of the evidence.  *Id.* at 592 n. 10.  Even if the Court finds the evidence reliable and relevant, it must also determine whether its probative value is outweighed by its prejudicial effect.  *Id.*

at 595.

III.     Discussion

In support of the present motion, Plaintiff relies largely on an Illinois state court case

analyzing the same expert evidence at issue in the present case:

> [T]he Court finds the testimony of Mr. Peterman to be unrelated to any
> potential areas of his expertise.  Instead, he offered a narrative summary of
> historical facts.  The Court finds that he has no expertise in assessing FTC
> involvement in regulation of the issues surrounding the allegations of
> Plaintiffs' Complaint.

*Price v. Philip Morris, Inc.*, 2003 WL 22597608 *21 (Ill. Cir. Ct. Madison County, March 21,

2003).  In this case, however, the court admitted Dr. Peterman's testimony into evidence,

which suggests that the court's findings related only to the weight, rather than the

admissibility, of Peterman's testimony.

As *Price* suggests, the Peterman Affidavit appears at first glance to contain a mere

summary of historical facts.  Upon closer inspection, however, it does much more.  The

Affidavit adds context to the historical facts, and from time to time, interjects opinion about

the meaning and significance of various actions of the FTC.

Indeed, it is these opinions which form the basis of Plaintiff's primary argument—that

Peterman employs inadequate and unreliable principles and methodology.  In *Daubert*, the

Court stated,

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one.  Its
> overarching subject is the scientific validity—and thus the evidentiary
> relevance and reliability—of the principles that underlie a proposed
> submission.  The focus, of course, must be solely on principles and
> methodology, not on the conclusions that they generate.

509 U.S. at 595.  Thus, Rule 702 requires not only that an expert bases his or her opinion

on "sufficient facts or data," but also that the testimony is the product of "reliable principles

and methods, and . . . the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.

The thrust of Plaintiff's argument is that Dr. Peterman does "not once explain what economic principles or method his opinions are based on."  Mot. to Strike 3-4.  Defendant cites Paragraphs 7-14 of the Affidavit, which explain the "structure and functioning of the FTC," as the portion which "leads to [Dr. Peterman's] conclusions on FTC policy."  Those paragraphs, however, simply discuss the role of the FTC in the market, and the FTC's interactions with the business, consumer, and scientific communities.  This information is helpful to understanding how Dr. Peterman draws his conclusions, but it seems to fall short of what one would expect from an expert economist.

This is not, however, fatal to Plaintiff's argument.  Although Dr. Peterman offers his opinion as an economist, he need not.  Rule 702 permits expert opinion evidence on the basis of "specialized knowledge," as long as it "will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  While Dr. Peterman does not seem to apply any particular economic analysis, he does explain the basis of his "specialized knowledge" of how the FTC operates, and he bases his opinion on that knowledge.  As Rule 702's disjunctive language makes clear, expert witnesses may offer "scientific, technical, or other specialized knowledge," and may be qualified "by knowledge, skill, experience, training, or education."   Id. (emphasis added).

Therefore, Dr. Peterman's opinion is best analyzed not as that of an economics expert applying economic analysis, but as somebody who, primarily through his experience with the FTC's Bureau of Economics, has acquired specialized knowledge about a complex issue—the FTC's regulation of cigarette advertising and promotion.  His understanding of

this issue has been helpful to the Court in explaining the significance of various FTC

actions (and would potentially be helpful to a jury as well).

In *Century Indemnity Co. v. Aero-Motive Co.*, 254 F. Supp. 2d 670 (W.D. Mich.

2003), a consultant was hired as an expert witness in the area of reconstructing lost

insurance policies. The expert was armed only with a law degree, a few years experience

in private legal practice, and fifteen years experience reviewing insurance policies in

various contexts as a consultant. *Id.* at 675-76.

The court admitted the testimony, holding first that "experience alone may be

sufficient to qualify a witness to give expert testimony." *Id.* at 677 (citing *United States v.*

*Kunzman*, 54 F.3d 1522, 1530 (10th Cir. 1995). Thus, the expert was qualified purely on

the basis of his "significant experience in commercial insurance underwriting practices and

. . . historical knowledge of forms used and coverages offered in the commercial insurance

industry." *Id.*

The court then went on to discuss the methodology underlying the expert's opinion:

> [The movant argues that the expert] should be precluded from testifying
> because the analysis he performed in reaching his conclusions is no different
> than the analysis employed by the attorneys for the parties or the analysis
> the Court will engage in to decide the pending motions. This argument must
> be rejected, because Federal Rule of Evidence 704(a) provides that
> "testimony in the form of an opinion or inference otherwise admissible is not
> objectionable because it embraces an ultimate issue to be decided by the
> trier of fact." Thus, a district court may admit "opinion testimony if the
> expert's specialized knowledge is helpful to the jury to understand the
> evidence or determine a fact in issue, even if the opinion embraces an
> ultimate issue to be decided by the jury." *United States v. Brown*, 110 F.3d
> 605, 610 (8th Cir. 1997). Testimony should be excluded, however, where it
> amounts to a legal conclusion or merely tells the jury what result to reach.
> Based upon its review of [the expert's] affidavit, the Court concludes that
> the opinions . . . pertain to issues of fact rather than conclusions of law.
> Because [the expert's] testimony is based on experience not possessed by
> the ordinary person, his testimony will assist the trier of fact as required by
> Rule 702 and will not impermissibly impinge on the role of the Court or the

> jury.  However, the Court will not permit [the expert] to give legal conclusions and will not consider any opinions constituting a legal conclusion in deciding the instant motions for summary judgment.

*Id.* at 677 (some internal citations omitted).

Finally, the court discussed the reliability of the expert's opinion.  In *Daubert*, the court explained, the Supreme Court offered as guidance "a non-exhaustive list of non-dispositive factors . . . (1) whether the theory or methodology has been or can be tested; (2) whether it has been subjected to peer review; (3) whether it has a known or potential rate of error; and (4) whether it has been generally accepted in the scientific community." *Id.* at 678 (citing *Daubert*, 509 U.S. at 593-94).  The court then went on to discuss the applicability of the *Daubert* factors:

> In *Kumho Tire* . . ., the Supreme Court considered whether the analysis in *Daubert* for determining the admissibility of expert testimony based upon scientific knowledge also applied to . . . testimony based upon "technical" or other specialized knowledge.  The Court held that a trial court's gatekeeping function under Rule 702 applies to all expert testimony, regardless of the basis of the expert's knowledge . . . .  With regard to the specific factors identified in *Daubert*, the Court concluded that . . . the test of reliability under Rule 702 is a "flexible" one, and application of the *Daubert* factors in a particular case may or may not be appropriate, depending on the nature of the particular testimony.  Thus, in certain cases, all of the *Daubert* factors may be helpful to the court's inquiry, while in other cases where reliability derives solely from the personal knowledge or experience of the witness, the factors may not be helpful at all.
>
> The Sixth Circuit has recognized that . . . the *Daubert* factors "are not dispositive in every case" and should be applied only "where they are reasonable measures of the reliability of expert testimony." *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001).  For example, in *First Tennessee Bank National Association v. Barreto*, 268 F.3d 319 (6th Cir. 2001), the Sixth Circuit concluded that the *Daubert* factors were not helpful in determining the admissibility of an expert's testimony regarding whether the plaintiff followed prudent banking practices.  The court reasoned that because the basis of the expert's testimony was his "own practical experiences throughout forty years in the banking industry," his opinions were not of a type that "lend themselves to scholarly review or to traditional scientific evaluation." *Id.* at 335.  Still, in all cases, a district court must confirm that "the factual underpinnings of the

expert's opinion [are] sound." *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999).

> The . . . *Daubert* factors are not helpful in assessing reliability in this case because [the expert's] opinions, which are based upon his experience in reconstructing lost insurance policies, are not the type of opinions that can be tested or verified or subjected to peer review. [His] testimony is more analogous to the expert testimony at issue in *First Tennessee Bank* where the basis for the expert's opinion was his "own practical experiences throughout forty years in the banking industry." *First Tenn. Bank*, 268 F.3d at 335.

*Id.* at 678-679 (some internal citations omitted).

*Century Indemnity Co.* provides a thorough application of relevant evidence law to a fact pattern analogous to the present case—where an expert's opinion relies primarily on specialized knowledge, gained through experience in a particular field. Its analysis of Rule 702, *Daubert*, *Kumho Tire*, and pertinent Sixth Circuit authority on the issue are well-reasoned. Because the Peterman Affidavit offers expert opinion short of legal conclusions, the Court, in its discretion, will follow the persuasive *Century Indemnity Co.* case.

IV.    Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby DENIES Plaintiff's Motion to Strike the Affidavit of John L. Peterman.

s/Nancy G. Edmunds

Nancy G. Edmunds
United States District Judge

Dated:  October 25, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 25, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager